MOORE, J.
 

 hWhen a dispute erupted between a homeowner and builder over restoration work performed under two home remodeling contracts, the homeowner filed suit against the builder’s corporation, the builder personally, and a subcontractor, seeking rescission of the contracts and damages on grounds of fraudulent inducement. Relying on a binding arbitration provision in both contracts, however, the trial court granted the defendant’s exception of prematurity and motion to stay the proceedings pending arbitration of the dispute; it also granted the builder’s exception of no right of action and the subcontractor’s exception of no cause of action. The homeowner filed this appeal. We reverse in part, affirm in part, and remand with instructions.
 

 
 *933
 
 FACTS
 

 The homeowner, Raymond F. Long, and Jeb Breithaupt Design/Build, Inc. (“Jeb, Inc.”), through its president, Joseph E. Breithaupt, Jr., entered into two contracts on September 26 and October 16, 2006, whereby the latter was to restore and remodel the plaintiffs architecturally significant “Streamline Moderne” home in the South Highlands neighborhood in Shreveport. The contract amounts were $56,948.14 and $84,191.62 respectively. The first contract involved exterior and roof work; the second substantial interior remodeling.
 

 The roofing work included removing and replacing the flat roof with a rubber roof, replacing vent covers and flashing, replacing the siding on the third floor “observatory” and adding two skylights. The second contract called for remodeling the master bedroom suite, kitchen, breakfast room, [2pantry and upstairs foyer, construction of a new deck, breakfast room entry, relocating the stairway and remodeling the stairway living area and upstairs laundry closet. Long contends that Jeb, Inc. was to provide architectural designs and plans, onsite supervision of the work and obtain all the necessary permits.
 

 Jeb, Inc. farmed out the roof removal and replacement to a subcontractor, Ron Carroll Builder, Inc. (“Ron Carroll”). At some point after Long had paid the entire first contract amount $56,948.14, and a little more than half, $46,700.00, of the second contract, a dispute developed, causing the cessation of work on the project. Also, Jeb, Inc., who, by act of merger on December 31, 2006, became Jeb Design/Build, LLC, subsequently filed a lien on Long’s house. It is not clear from the record exactly when and what triggered the dispute or disputes between the parties, or whether the disagreements began at the outset of the project. It is clear, however, from the numerous detailed complaints and allegations of faulty design, substandard workmanship and thwarted expectations regarding Mr. Breithaupt’s involvement, that Long was satisfied with very little of Mr. Bx*eithaupt’s supervisory input and the quality of his work.
 

 Long eventually filed this suit styled “Petition for Rescission and/or Breach of Contracts, Return of Funds, Cancellation of Wrongful Lien, Damages & Attorney Fees” on August 13, 2007, naming as defendants: Jeb Breithaupt Design/Build, Inc. (“Jeb, Inc.”), the original corporate entity who contracted with Long; Jeb Design/Build, LLC (“Jeb Design/Build”), the successor in interest to Jeb, Inc., which assumed the obligations of the |ocontracts on December 31, 2006; Joseph E. Brei-thaupt, Jr., the principal of both companies; Ron Carroll Builder, Inc. (“Ron Carroll”), the subcontractor who performed the roofing work, and the two contractors’ unnamed insurers.
 

 Among several alternative theories of recovery alleged in the petition, including breach of contract and negligence, Long sought rescission of the two contracts on grounds of error and fraudulent inducement. According to his petition, Long’s primary purpose in hiring Jeb, Inc. for the project was to gratify his nonpecuniary interest in restoring this home of historical and architectural significance. He alleged that Joseph Breithaupt understood this and held himself out “as a qualified architect with the education, training and experience in design, historical restoration and complex renovation” to do the renovations Long desired, along with an interest and enthusiasm for the project. Long alleges he entered into the contracts “in reasonable reliance that Mr. Breithaupt was a qualified and licensed architect, designer and contractor,” but, contrary to his “express understanding,” Mr. Breithaupt had
 
 *934
 
 “no certification in architecture and is not a member of the American Institute of Architects,” although he held “himself out as qualified to render architectural plans, specifications and drawings and places a grossly misleading abbreviation for ‘architect’ on his correspondence, plans[,] drawings and [ ] advertisements.”
 

 Long alleged that he would not have entered into the contracts but for error induced through Breithaupt’s misrepresentations and suppression of the truth in order to gain his trust and confidence that he or Jeb, Inc. “had 14the requisite architectural, design, and construction experience, manpower, supervisory personnel, interest, reputation, training, professionalism, experience and qualifications ... to properly design, plan and specify this project ... and perform in a good, honest and workmanlike manner ... and provide [Long] with the appropriate level of commitment, manpower and supervision.” Long alleged that the defendant’s actions constitute “error such as to vitiate [his] consent under the subject contracts,” as well as fraudulent inducement.
 

 Jeb, Inc., now Jeb Design/Build, met the petition with an exception of prematurity and motion to stay based on a binding arbitration clause contained in both contracts: “Contractor and Owner agree that any controversy which arises between them out of this Agreement or the Project shall be settled by binding arbitration, as opposed to litigation.” However, there is nothing in the record to indicate that either party sought arbitration of the disputes prior to suit being filed.
 

 Additionally, Mr. Breithaupt, who was named a defendant personally, filed an exception of no right of action; Ron Carroll, the subcontractor, filed an exception of no cause of action on the basis of lack of privity of contract.
 

 Long opposed the exception of prematurity, contending that because he alleged the contracts were void
 
 ab initio
 
 for fraud and error, the arbitration clause was not triggered. Regarding the other exceptions, Long argued that, inasmuch as Mr. Breithaupt and Ron Carroll were not parties to the contracts, the arbitration clause should not apply. In any event, he contended that his allegations of negligence against these two defendants |fiand other statutory claims were outside the scope of the contract and its binding arbitration clause.
 

 After a hearing, the trial court granted all three exceptions. The court concluded that the arbitration clause in the contract was broad enough to include Long’s rescission claim based on fraud and error, so that matter, along with his other claims, should proceed to arbitration. The court granted Mr. Breithaupt’s exception of no right of action on grounds that he was at all times a representative of the corporation or LLC, and thus not personally liable. The court granted Ron Carroll’s exception of no cause of action on grounds that Long’s allegations of negligence in the petition were conclusory and that there was no privity of contract between Ron Carroll and Long. The court did not grant Long leave to amend his petition.
 

 After this ruling, Long filed a motion for leave to amend his petition, which the district court granted. Long filed an amended and supplemental petition and defendants filed motions for an extension of time to answer. Long also filed a motion for a new trial on the exceptions. After a brief hearing, the district court denied the motion for a new trial on the exceptions and stayed the proceedings with regard to the amended petition so that defendants were not required to file an answer at that time.
 

 
 *935
 
 Long then filed this appeal of the district court’s rulings on the exceptions.
 

 [ JHSCUSSION
 

 The Dilatory Exception of Prematurity and Motion to Stay
 

 The Louisiana legislature has enacted legislation that favors arbitration of disputes.
 
 Broussard v. Compulink Business Systems, Inc.,
 
 41,276 (La.App. 2 Cir. 8/23/06), 939 So.2d 506. La. R.S. 9:4201 provides:
 

 A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
 

 La. R.S. 9:4202 provides:
 

 If any suit or proceedings be brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which suit is pending, upon being satisfied that the issue involved in the suit or proceedings is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until an arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with the arbitration.
 

 The failure of a party to arbitrate in accordance with the terms of an agreement may be raised either through a dilatory exception of prematurity demanding dismissal of the suit
 
 or
 
 by a motion to stay the proceedings pending arbitration. (Emphasis added).
 
 Wied v. TRCM, LLC,
 
 30,106 (La.App. 2 Cir. 7/24/97), 698 So.2d 685;
 
 Folkland v. Thomson McKinnon Securities Inc.,
 
 484 So.2d 310 (La.App. 3 Cir.1986);
 
 State v. Algernon Blair Inc.,
 
 415 So.2d 612 (La.App. 3 Cir.1982). The defense to a petition that plaintiffs are not entitled to judicial relief because of a valid agreement to submit their claims to arbitration may be raised by the dilatory exception 17pleading prematurity pursuant to La. C.C.P. art. 926(A)(1), which is determined on the basis of the showing made at the
 
 in limine
 
 trial of the exception, including evidence introduced at the trial thereof.
 
 Cook v. AAA Worldwide Travel Agency,
 
 360 So.2d 839 (La.1978);
 
 Town of Homer v. General Design, Inc.,
 
 42,027 (La.App. 2 Cir. 5/30/07), 960 So.2d 310. When the issue of failure to arbitrate is raised by the exception pleading prematurity, the defendant pleading the exception has the burden of showing the existence of a valid contract to arbitrate, by reason of which the judicial action is premature.
 
 Wied, supra; Cook, supra.
 

 In this instance, Jeb, Inc. and Jeb Design/Build jointly filed both an exception of prematurity and a motion to stay based on the arbitration clauses in the two contracts. At the hearing on the exception and motion, Jeb Design/Build placed the two contracts and the merger agreement into evidence. Paragraph 18 of each contract reads:
 

 Binding Arbitration
 

 Contractor and Owner agree that any controversy which arises between them out of this Agreement or the Project shall be settled by binding arbitration, as opposed to litigation. Should an irreconcilable dispute arise, either party can invoke this provision by giving written notice to the other of the nature of the problem. Each party shall appoint a competent, disinterested person as their
 
 *936
 
 arbitrator and the two persons thus appointed shall select the third arbitrator, who must also be disinterested. The decision of a majority of the arbitrators shall be final and binding between Contractor and Owner. Each party shall pay half of the costs of arbitration. If the arbitration concerns payments owed by the Owner to the Contractor and an award is made to the contractor by the arbitrators, the award shall be payable within three business days of the date of the arbitration award.
 

 |sLong introduced no evidence at the hearing, standing on the strength of the allegations in his verified petition
 
 [1]
 
 and arguing that when the plaintiff files a suit for rescission of a contract containing the arbitration clause and alleges that the contract is invalid
 
 ab initio
 
 due to a vice of consent, the court must determine the validity of the contract first in the face of the allegations of its invalidity before granting the exception or staying the proceedings pending arbitration, citing
 
 George Engine Co. v. Southern Shipbuilding Corp.,
 
 350 So.2d 881(La.1977).
 

 The trial court rejected Long’s contention that the validity of the agreement was not arbitrable, and held that, notwithstanding his allegations of fraud, “the court is persuaded that the case of
 
 Williams v. Litton,
 
 03-805 (La.App. 3 Cir. 12/23/03), 865 So.2d 838 is on point that the allegations of fraud as defenses are to proceed to arbitration with the balance of the claims Long has.” Although our interpretation of
 
 Williams v. Litton, supra,
 
 leads to a somewhat different reading of the holding in that case, our review concerns the judgment granting the dilatory exception and the motion to stay, not the trial court’s reasons therefor.
 

 Ordinarily, the threshold inquiry is whether the parties have agreed to arbitrate the dispute in question.
 
 Johnson’s, Inc. v. GERS, Inc.,
 
 34,268 (La.App. 2 Cir. 1/24/01), 778 So.2d 740. This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of | nthat arbitration agreement.
 
 Johnson’s Inc. v. GERS, Inc., supra.
 

 Long disputes neither that he entered into the two contracts nor the presence of the arbitration clauses therein. He does dispute the validity of the two contracts as a whole, however, claiming that the contracts were null from the outset because he was fraudulently induced into error as to a cause of the agreement, namely his belief that Mr. Breithaupt was a certified architect who belonged to the American Institute of Architects and possessed the necessary skills to perform the contracts. He contends that if the contracts are completely null due to this alleged vice of consent, then the arbitration clauses in the contracts are also null and he is entitled to rescission.
 

 The question then becomes, when fraud is alleged in the confection of a contract containing a broad arbitration clause, is the validity of the contract a matter to be arbitrated or decided by the trial court? As previously stated, Long insists that the trial court must decide this issue first. A valid contract requires the parties’ consent. La. C.C. art. 1927. When a party shows that fraud vitiated his or her consent, that party may revoke or rescind that contract. La. C.C. art. 1948. Interpreting
 
 *937
 
 an arbitration clause very similar to the arbitration provision in this case, the Louisiana Supreme Court in
 
 George Engine, supra,
 

 [2]
 

 held that the trial court, not the arbitrator, had to decide the question of invalidity of the contract | mbecause of lack of consent. The court said it would be absurd to require arbitration under a contract that did not legally exist. The main rationale for the decision, which was contrary to the federal jurisprudence
 
 [3]
 
 interpreting the ■ Federal Arbitration Act (“FAA”), is that courts have far more expertise in resolving legal issues which go to the validity of a contract than do arbitrators, who generally decide factual issues related to contract performance.
 
 Standard Co. of New Orleans, Inc. v. Elliott Const. Co.,
 
 363 So.2d 671 (La.1978).
 

 In
 
 TRCM, LLC v. Tivilight Partnership,
 
 30,331 (LaApp. 2 Cir. 1/21/98), 706 So.2d 1037,
 
 writ denied,
 
 1998-0367 (La.3/13/98), 713 So.2d 475, on remand from the supreme court, a panel of this court distinguished the arbitration clause in that case from that in
 
 George Engine, supra,
 
 and held that an arbitration panel, rather than the court, was to determine the validity of the contract. The arbitration clause in
 
 TRCM
 
 is distinctly different from the arbitration clause in the case at bar because it called for arbitration for “any controversy arising out of the agreement
 
 or the validity thereof.”
 
 We further determined that federal law applied, even though we concluded that there was “no gross difference in federal and Louisiana law.”
 
 TRCM, LLC, supra
 
 at 1040.
 

 Inin
 
 Wied v. TRCM, LLC, supra,
 
 the plaintiff, a physical therapist, filed a petition seeking a preliminary injunction to stay arbitration pending the district court’s determination of the validity and enforceability of an employment agreement that contained a noncompetition agreement. Wied also sought a declaratory judgment that the agreement was null, void, invalid and unenforceable. TRCM filed a dilatory exception of prematurity, arguing that Wied had failed to complete arbitration.
 

 At the trial on the exception, TRCM placed the employment agreement into evidence, which contained an arbitration clause that provided that “[a]ny controversy or claim arising out of or relating to this Agreement shall be settled by binding arbitration.” It further provided that “[t]he jurisdiction of the arbitrator and the arbi-trability of any issue raised by the parties shall be decided by the arbitrator in the first instance.” Wied introduced no evidence, but stood on his allegation that the employment agreement was null and void
 
 *938
 
 in its entirety because it lacked a legal cause. He also argued that the employment agreement’s noncompetition clause violated La. R.S. 23:921.
 

 The trial court sustained the exception of prematurity. On appeal, Wied argued that, for the purpose of the dilatory exception of prematurity, his allegation that the contract was null for lack of legal cause should have been accepted as true.
 

 We rejected this argument. The law contemplates a trial of the exception of prematurity, at which evidence is received. La. C.C.P. art. 930. Although the party alleging prematurity carries the burden of proving the | ^exception should be granted, Wied was the party alleging that the employment agreement was null for lack of cause. As such, he was required to do more than rest on the conelusory allegations of law in his petition. He had to produce evidence that the contract lacked a lawful cause. Accordingly, we affirmed the trial court’s judgment sustaining the exception of prematurity.
 

 Finally, in
 
 Williams v. Litton, supra,
 
 a case relied on by the trial court in the instant case, two owner/members of a weight-loss center, a limited liability company (“LLC”), sued the LLC, its manager and another owner/member, alleging fraudulent inducement and other causes of action. The defendants filed a motion to dismiss or, alternatively, to stay proceedings pending arbitration pursuant to the “operating agreement” signed by the parties and containing an arbitration clause. The trial court denied the motion to dismiss or stay the proceedings, ruling that the plaintiffs’ claim that they were fraudulently induced to enter into the operating agreement was not an arbitrable claim. The defendants appealed.
 

 On appeal, the third circuit concluded that the trial court erred in failing to decide what law, the Federal Arbitration Act (“FAA”) or the Louisiana Arbitration Law, governed its decision. The agreement clearly involved interstate commerce; however, it contained a choice of law provision selecting Louisiana. Although there is virtually no difference in the language of the federal and Louisiana statutory laws concerning arbitration, there is an important difference as to the arbitrability of the validity of a contract. As noted above, the Louisiana Supreme Court in
 
 11SGeorge Engine, supra,
 
 interpreting La. R.S. 9:4201, held that trial courts retain jurisdiction to decide the validity of a contract allegedly induced by fraud before sending the matter to arbitration. Hence, if the main contract falls, then so does the arbitration clause. By contrast, the United States Supreme Court, in
 
 Prima Paint Corp. v. Flood & Conklin, supra,
 
 at note 3, interpreting the very same statutory language (9 U.S.C. § 2), held that a trial court is confined to an analysis of whether the arbitration provision standing alone is valid and enforceable. The validity of the main contract is a question for the arbitrator. The federal approach, called the “separability” doctrine, was rejected by the Louisiana Supreme Court in
 
 George Engine, supra.
 

 Ultimately, the
 
 Williams
 
 court did not decide whether federal or state law applied to that case because it determined that the allegations of fraud in the plaintiffs’ petition were much too general and conelusory to merit consideration. Therefore, the court found that the plaintiffs had not alleged facts sufficient to support their claim that fraud vitiated their consent through error; accordingly, the petition for rescission was insufficient to warrant denying arbitration under federal or state law.
 

 In the instant case, the trial court stated in its reasons for judgment that “when the plaintiff alleges fraud, as was done in this case, the court is persuaded that the case
 
 *939
 
 of
 
 Williams v. Litton,” supra,
 
 “is on point that the allegations of fraud as defenses are to proceed to arbitration with the balance of the claims Long has.” However, Williams actually held that the trial court erred in finding that the allegations of fraud were sufficient to |14avoid arbitration; it did not submit the fraud claims to arbitration. Instead, it simply reversed the judgment and remanded the case to the trial court with an order to issue a stay of the proceedings pending arbitration.
 
 [4]
 

 George Engine, supra
 
 has never been overruled, although it has been criticized and questioned both by members of the deciding court and circuit courts. For this reason, we are constrained to hold that the trial court erred insofar as it submitted to arbitration the claim of fraudulent inducement.
 

 One of the primary concerns of courts is that a party seeking to avoid arbitration will simply allege fraudulent inducement in order to get the case into district court. For this reason, allegations of fraud in a petition are closely scrutinized by the court.
 
 Williams, supra.
 

 In this instance, the trial court, following
 
 Williams, supra
 
 implicitly ruled that Long’s allegations of fraud are not sufficient to avoid arbitration, and therefore, sustained the dilatory exception
 
 and
 
 granted the motion to stay. Our review of the transcript of the hearing indicates that the court believed that the threshold issue was whether the arbitration clause itself was broad enough to encompass the plaintiffs claim for rescission based on fraud and error and thus should be submitted to arbitration. As previously stated, this was error under the current jurisprudence where federal arbitration law is not implicated. On the other hand, the trial court implicitly ruled that the allegations of fraud in the plaintiffs petition were insufficient to avoid arbitration. We therefore must determine 115if this is correct.
 

 Louisiana Code of Civil Procedure Article 856 provides:
 

 In pleading fraud or mistake, the circumstances constituting fraud or mistake shall be alleged with particularity. Malice, intent, knowledge, and other condition of mind of a person may be alleged generally.
 

 Generally speaking, Long’s allegations of fraud and error concern alleged misrepresentations by Breithaupt regarding his status as a licensed and certified architect. An abridged version of the factual allegations of fraud in Long’s petition follows:
 

 (a) Plaintiff was introduced to and met with Defendant Joseph E. Breithaupt, Jr.,
 
 who held himself out to Plaintiff as a qualified architect
 
 with the education, training and experience in design, historical restoration and complex renovation which was sought by Plaintiff, and who claimed to have knowledge and interest in the “Moderne” or “Streamline” period. (Petition, ¶ 6)
 

 (b) Defendant appeared interested, enthusiastic and excited in his conversations with the Plaintiff over the restorations and “with the purpose, design, skill and intention that only a smooth and seasoned salesman can perform,
 
 Brei-thaupt induced Plaintiff into a false sense of trust and confidence that Plaintiff had indeed found the perfect architect,
 
 designer and contractor ... would be a hands-on architect, designer and contractor.” (Petition ¶ 8)
 

 
 *940
 
 (c)
 
 In reasonable reliance by Plaintiff that Breithaupt was a qualified and licensed architect,
 
 designer and contractor ..., Plaintiff entered into two contracts with Defendant. (Petition, ¶ 9)
 

 (d) Defendants, through negligence, ineptitude, inexperience or
 
 intentional misconduct
 
 and lack of professionalism, manpower and supervision defaulted/and or failed to perform under the contracts. (Petition, ¶ 13)
 

 (e) Additionally and unbeknownst and
 
 contrary to Plaintiffs express understanding, Defendant Breithaupt has no certification in architecture and is not a member of the American Institute of Architects, though Breithaupt holds himself out as qualified to render architectural plans,
 
 [ ^specifications and drawings and places a grossly misleading abbreviation for ‘architect’ on his correspondence, plans and drawings and in his advertisements. (Petition, ¶ 14)
 

 (f) Plaintiff entered into the subject contracts with Defendants based only upon the trust and confidence that Defendants “sold” to Plaintiff and that Defendants misrepresented Plaintiff into believing the Defendants had the requisite architectural, design, and construction experience ... and qualifications to perform the contracts in a good, honest, and workmanlike manner, and would provide Plaintiff with the appropriate level of commitment and manpower. (Petition, ¶ 18)
 

 The claims overwhelmingly allege a failure to perform, poor workmanship, failure to obtain permits, improper or poor materials, improper installation; in effect, they allege a breach of contract that Long has clothed or couched in a “fraud” claim. However, these are precisely the kind of factual claims that arise out of the performance of the two contracts, not their confection. Therefore, they are arbitrable claims under the agreement to arbitrate “any controversy” arising out of the “Agreement or Project.”
 

 On the other hand, the allegations that Mr. Breithaupt fraudulently misrepresented that he was a licensed and certified architect present a more difficult issue. Long alleged that Mr. Breithaupt “held himself out as a qualified architect” who was “qualified to render architectural plans, specifications and drawings and places a grossly misleading abbreviation for ‘architect’ on his correspondence, plans and drawings and in his advertisements.” Long did not, however, allege specific facts and circumstances regarding how and when Mr. Breithaupt “held himself out” as a licensed architect.
 

 | nLong introduced no evidence at the
 
 in limine
 
 hearing on the dilatory exception to support the fraud allegations. Although he is correct that the party who files the exception carries the burden of proof on the exception, when the plaintiff attacks the validity of the contract, he cannot simply rest on the allegations of his petition.
 
 Wied v. TRCM, LLC, supra.
 

 On the other hand, the transcript of the exception indicates that the trial court intended to limit the evidence to the question of the existence of the arbitration provision in the contract and whether it was broad enough to include arbitration of Long’s claim for rescission due to fraud. Although the court gave the plaintiff an opportunity to submit evidence at the hearing, it also indicated it would not receive evidence that the contract should be rescinded.
 

 Accordingly, we reverse the judgment sustaining the dilatory exception and remand this case to the trial court with instructions to hold an
 
 in limine
 
 evidentia-ry hearing pursuant to the dilatory exception to determine the validity of the con
 
 *941
 
 tracts in light of Long’s allegations that the contracts were void
 
 ab initio
 
 due to fraud and error, such that there was no “meeting of the minds” of the parties. La. C.C. art. 1948. Should the trial court hold, based on the evidence, that there were no contracts, then the court should initiate trial proceedings in accordance therewith to determine the remaining claims. If the court finds that Long failed to carry his burden that the contracts are null and should be rescinded, then the court is instructed to order the parties to submit all claims to an arbitration panel within 30 days or waive the right to arbitrate any claims under the agreement.
 

 |
 
 mThe Exception of No Right of Action
 

 As previously stated, Long sued Joseph E. Breithaupt, Jr. personally, alleging breach of fiduciary duty and negligence. The defendant filed an exception of no right of action. The trial court sustained the exception, finding that Mr. Breithaupt “was at all times a representative of the corporation and/or the LLC.” This was clearly error by the trial court.
 

 An exception of no right of action is designed to test whether the
 
 plaintiff
 
 has a real and actual interest in the action. La. C.C.P. art. 927(6). In other words, does the plaintiff have a legal interest in the subject matter of the litigation?
 
 Schexnayder v. Gish,
 
 41,819 (La.App. 2 Cir. 2/7/07), 948 So.2d 1259. The exception is not designed to test whether the defendant is the right defendant.
 

 In this instance, clearly Mr. Long has a legal interest in the subject matter of this litigation, and therefore, granting the exception of no right of action was error. On the other hand, a trial or appellate court may notice on its own motion an exception of no cause of action. However, the exception of no cause of action is not a substitute for a motion for summary judgment. In other words, the court’s conclusion that Mr. Breithaupt was not personally liable for any damages Long sustained because Mr. Breithaupt signed the contracts on behalf on the corporation cannot be decided on the exception of no cause of action where the court must accept the allegations in Long’s petition as true.
 

 On the other hand, given the fact that Mr. Breithaupt negotiated and signed the two contracts on behalf of Jeb, Inc., and the question of his | ^personal liability or immunity arises out of the agreement or the performance thereof, it is a matter that is subject to arbitration.
 

 Accordingly, we reverse the judgment sustaining the exception of no right of action.
 

 The Exception of No Cause of Action
 

 Defendant, Ron Carroll Builder, Inc., filed an exception of no cause of action against Long’s allegations of negligence. The trial court granted the exception on grounds that the allegations of negligence lacked factual specificity and because there was no privity of contract between Long and Ron Carroll Builder, Inc.
 

 The peremptory exception of no cause of action is tried on the face of the pleadings and the court accepts the facts alleged in the petition as true, determining whether the law affords relief to the plaintiff if those facts are proved at trial.
 
 Barrie v. V.P. Exterminators, Inc.,
 
 625 So.2d 1007 (La.1993). To sustain the exception, the court must make a determination that the plaintiff has no cause of action under any evidence admissible at trial.
 
 Id.
 

 Because Long had no privity of contract with Ron Carroll, Long has no remedy for breach of contract against Ron Carroll.
 
 Rivnor Properties v. Herbert O’Donnell, Inc.,
 
 92-1103 (La.App. 5 Cir. 1/12/94), 633
 
 *942
 
 So.2d 735,
 
 writs denied,
 
 94-1293 and 94-1305 (La.9/2/94), 643 So.2d 147. This does not mean, however, that Ron Carroll cannot be held liable to the homeowner for damages caused by negligent workmanship.
 
 See Marine Insurance Company v. Strecker,
 
 234 La. 522, 100 So.2d 493 (1958). ^[^(Notwithstanding lack of privity between tenant and contractor, tenant could recover from contractor for damage caused by fall of cabinet installed by contractor for owner of house).
 

 However, the damages for which a subcontractor may be liable to the owner for his negligent workmanship and with whom there is no privity of contract, is not for the defective work, but for damages caused by the defective work. The court in
 
 Lumber Products, Inc. v. Hiriart,
 
 255 So.2d 783 (La.App. 4 Cir.1971) explained:
 

 A careful examination of
 
 [Streclcer]
 
 and other cases allowing recovery against a contractor in tort by one not privy to a contract with him reveals a significant and basic distinction from those cases denying recovery because of the absence of privity of contract. Where the damage sued for is the defectively performed work itself, the action is strictly a contractual one and only those who are in privity with the contractor have an action against him. However, where the damage sued for is not the defective work but is instead damage caused by the defective work, a tort action against the contractor is proper when the elements for delictual recovery are present.
 

 Long’s petition alleges that the defendants breached their legal duty by providing substandard work and defectively performing the contracts that caused damage to plaintiff and plaintiffs residence. In paragraph 13 of the petition, the plaintiff alleges various “failures” regarding the roofing work. All of these alleged failures are related to workmanship or defects in the roofing work itself.
 

 We therefore agree with the trial court that the facts alleged in the petition against Ron Carroll Builder, Inc. fail to state a cause of action against Ron Carroll, Inc.
 

 121 We do agree, however, that plaintiff should have been given leave to amend his petition. La. C.C.P. art. 934. Subsequently, upon his own motion, plaintiff submitted an amended petition. However, the trial court stayed the proceedings pending arbitration.
 

 CONCLUSION
 

 For the reasons stated, we reverse the judgment sustaining the dilatory exception of prematurity and motion to stay and we remand with instructions. We reverse the judgment sustaining the exception of no right of action. We affirm the judgment sustaining the exception of no cause of action. We vacate the stay order of the trial court pending remand and proceedings in accord with this judgment.
 

 REVERSED IN PART; AFFIRMED IN PART; REMANDED WITH INSTRUCTIONS.
 

 [1]
 

 . La. C.C.P. art. 930 states: “On the trial of the dilatory exception, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition.” In the instant case, the court declined to hear evidence related to rescission of the contract on grounds of fraud.
 

 [2]
 

 . In
 
 George Engine,
 
 the plaintiff, as in this case, alleged that the agreement entered into, containing a "broad” arbitration provision, was void
 
 ab initio
 
 as a result of misrepresentation of material facts constituting error in the principal cause. The court explained that it was interpreting the Louisiana Arbitration Act, 9:4201, 4203, not the Federal Arbitration Act; therefore, it found that the legislative intent of these provisions was that an arbitration agreement should be enforced by the courts, unless the court, not the arbitrator, finds grounds at law or in equity for the revocation of the contract.
 
 Id.
 

 [3]
 

 . In
 
 Prima Paint Corp. v. Flood & Conklin Mfg. Co.,
 
 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), the United Stales Supreme Court specifically held that under the FAA, the issue of fraud in the inducement of a contract generally must be submitted to arbitration when the contract contains an arbitration clause providing for reference of any controversy or claim arising out of or relating to an agreement or breach thereof, in the absence of evidence that the contracting parties intended to withhold that issue from arbitration. By contrast, if the claim is fraud in the inducement of the arbitration clause itself, an issue which goes to the making of the agreement to arbitrate, the federal court may proceed to adjudicate it.
 
 Id.
 

 [4]
 

 . The court stated: "Thus, we see no reason to remand this matter to the trial court for consideration of the 'fraud' claims. Considering the petition’s failure to meet the requirements of La. C.C.P. art. 856, the trial court need not accept any evidence concerning the allegations of fraud, as we have properly dispensed with them.”
 
 Williams, supra
 
 at 850.