PITMAN, J.
11 Applicant Regions Bank (“Regions”) seeks review of the trial court’s overruling of its exceptions of prematurity and lack of subject matter jurisdiction and the denial of its alternative motion to stay pending arbitration. This court granted the writ and made it peremptory, but the supreme court granted writs and remanded, ordering that this court have the matter fully briefed and argued. After briefing and oral argument, the writ is granted, made peremptory and the judgment of the trial court is vacated. The motion to stay pending arbitration is granted.
FACTS
Respondent Judy Dove Swaggart filed suit against Regions; Brett Munson, the manager of the branch bank; an unknown person identified as John Doe; and ABC Insurance Company; alleging that, she entered into a contract with a Regions branch in Monroe, Louisiana, to lease two safe deposit boxes on July 7, 2011. These boxes were allegedly leased when Byron Johnson was the manager of that branch of the bank. She alleged that she later acquired a third box.[1] She claimed she was never given a copy of the contracts leasing two boxes or the box keys. She asserted that between $600,000 and $700,000 in gold coins, silver bars and jewelry, comprising her entire life savings and retirement funds, were placed in the boxes.
Respondent alleged that, in August 2014, when she went to Regions to withdraw some items for appraisal and possible sale, Munson had |¡>replaced the previous branch manager, Johnson. Munson told her that Regions had registered only one box to her, Box 1148, and claimed it had no records that she had leased any other box *1121 es. She opened Box 1148 and retrieved a few items, but, otherwise, found the box empty of the valuable property she claimed it should have contained. She returned two days later and asked to see the paperwork associated with her safe deposit box. Munson showed her the paperwork for Box 1148, the lease and the box entry log. She asked him for a cashier’s check; and, when he left the office, she apparently took the documentation and left the building. He discovered her paperwork was missing from his desk and called her to ask if she had mistakenly taken it, but she denied doing so.
Respondent claims that, a few days.later, she received an anonymous letter in the mail which enclosed a copy of the contract referencing Box 1121 with account number 10480011215, created on July 7, 2011. This contract is not signed by Respondent. She also had a copy of the contract for lease of Box 1148, but that contract had been altered in that the box number and account numbers had been scratched out and 1148 was written above the box number and the number 00010480011484 was written above the account number. Her signature is present on the lease of Box 1148, and it is dated July 7, 2011.
A few days later, an attorney named Sedric Banks went to the same branch of Regions and, on behalf of Respondent, showed the manager the contract with the scratched-out information, but he refused to tender it or allow Regions to make a copy of it. He claimed that Respondent had lost a [.^significant amount of property as a result of placing her valuables in Regions’ safe deposit box(es).
In September 2014, Regions filed a demand for arbitration with the American Arbitration Association seeking recovery of the contract and the log associated with the safe deposit box, as well as seeking a declaration that Regions was not liable to Respondent for any losses. Although Regions tried to twice serve this demand on Respondent, service was never made.
Subsequently, on July 21, 2015, Respondent filed this suit alleging negligence on the part of Regions and its employees, breach of contract and that damages were due .for mental anguish she suffered for her loss of $750,000 worth of property.
Regions filed a dilatory exception of prematurity, declinatory exception of lack of subject matter jurisdiction and an alternative motion to stay pending arbitration. It contended that, when Respondent rented the safe- deposit box, she signed a Safebox Customer Contract, the first page of which notified her that the lease agreement, which began on the reverse side of the form, limited or waived certain of her rights, including that she- agreed to arbitrate pursuant to the lease and she was waiving the right to bring a court action. The contract also provided that:
[a]ll unresolvable disputes or claims pertaining to Your Box and this Lease or the relationships that arise therefrom, whether based in contract, tort, or otherwise, shall be resolved by binding arbitration under the expedited procedures of the Commercial Financial Disputes Arbitration Rules of the American Arbitration Association (AAA) and Federal Arbitration Act in Title 9 of the US Code. ■
In conformity with the contract provisions, Regions alleged that Respondent’s litigation was premature because the parties had | ¿mutually agreed to arbitrate her claims. Alternatively, it alleged that the trial .court lacked subject matter jurisdiction to adjudicate the matter based on the enforceable arbitration agreement. Finally, and in the alternative, it prayed that a motion to stay proceedings pending arbitration should be granted based, on the *1122 provisions of the Louisiana Binding Arbitration Law, La. R.S. 9:4201 et seq.
In connection with the exceptions, Regions filed an affidavit by Munson, which stated that he was aware of Respondent’s complaints, that she had leased Box 1148 and signed a Safebox Customer Contract, which was the same, or substantially similar to one attached to the affidavit, at least insofar as the provisions relating to arbitration of claims, and that it was a copy of the forms used by all branches of Regions as of the date Respondent contracted to lease her safe deposit box. He further stated that Respondent had come to the bank and taken the contract and log book associated with Box 1148. He also stated that Attorney Banks had left Regions with Respondent’s claims unresolved and had later informed Regions in writing that he no longer represented Respondent.
Respondent filed an opposition to the exceptions and alleged that Johnson, Regions’ branch manager at the time she rented the boxes, had to assist her with carrying a large, heavy bag of property into the bank to be deposited into a safe deposit box. She claimed that, on January 1, 2012, she and Wayne Hummel, an appraiser, viewed at least two of the boxes and the valuables therein. Hummel allegedly provided her with an appraisal and purchased some of the items. Attached to the opposition were copies of | ¡¡three Safe-box Customer Contracts. The contract for Box 1121 was unsigned, a contract for Box 1148 was unsigned and the third, for the same Box 1148, was the altered contract containing the scratched-out information, and it was signed by Respondent.
It is unclear where Respondent obtained the clean, but unsigned, copy of the contract indicating she was renting Box 1148. The copy that was signed, she argued, was prepared by Johnson in July 2011. Thus, she claimed, the one contract for the box (1148) that Regions acknowledged as hers was not the contract for which she consented or signed. She argued that Regions denied she even had contracts for the other two boxes that she claims.
Respondent contended that the Safebox Customer Contract for Box 1148 lacked her consent and was, therefore, void and unenforceable. She stated that, because Regions denied knowledge of her renting the two other boxes, it should be denied the right to enforce the alleged arbitration agreement in the contracts pertaining to those boxes. She argued that her suit was not premature since there was no valid arbitration agreement, that the trial court did not lack subject matter jurisdiction and that there was no need to stay this matter pending arbitration.
In response, Regions argued that Respondent’s opposition addressed the merits of her underlying claims, but did not present any evidence to rebut the existence of a valid arbitration clause. It asserted that, regardless of how many safe deposit boxes Respondent leased, she would have signed a contract containing an unambiguous arbitration clause for each box. It noted that the contracts submitted by Plaintiff were incomplete and consisted of |fionly the first page of each contract. However, it also noted that the first page of the contract contained an arbitration clause located just above Respondent’s signature.
The exceptions and motion came before the trial court for hearing on October 15, 2015. Only Munson was called to testify. He testified that, if a person wished to lease a safe deposit box from Regions, he/she would choose the size and location of the box before registering it in his/her name. He stated that, in his employment at Regions, he had never known anyone to lease a box without signing a contract. The customer would receive a copy of the contract and Regions would retain the origi *1123 nal. The customer would be issued the only-two keys for the box. He identified the three-page blank contract, introduced as Defendant’s Exhibit 1 (“D~l”), as the contract which every customer would sign to lease a safe deposit box.
Munson further testified that, while he did not personally witness Respondent sign the contract for Box 1148, he did see the contract (D-2), with information marked out and additional information handwritten in, and the related entry log, on his desk in his office with Respondent. He stated he did not know if the box number was changed before or after Respondent signed the contract; however, he explained that the number of the box and the account had been changed, probably because Respondent originally chose Box 1121 and then it was discovered that that box was unavailable. He opined that, for that reason, Region’s copy of the contract was altered to replace the box number and account number for Box 1148, which was available. Regions had only the first page of the contract for Box 1148 since ^Respondent had denied taking the contract from his office and had filed only the first page with her opposition.
Munson also stated that, following the visits by Respondent, he conducted some research on her business with Regions and discovered that all of her safe deposit boxes in Arkansas were closed and that she had not accessed any boxes leased to a family member in Monroe. He further stated that, when Attorney Banks came to Regions within days of Respondent’s visit when the contract disappeared, he brought with him the same contract for Box 1148 that had the altered box and account numbers above the scratched-out information that had disappeared the day Respondent was in his office. While cross-examining Munson, Respondent introduced only the first page of the unsigned contract for Box 1121.
After the hearing on the exceptions, the trial court noted that the only contract bearing Plaintiffs purported signature also contained changes to the account and box numbers, which were in a different ink than her signature. It further noted that no evidence was presented as to whether Respondent signed the contract before or after the changes were made and that such changes were not standard practice. It found no evidence that Respondent received any pages of any contract, other than the single page of the contract concerning Box 1148, which contained the changes. It noted:
In this matter on this date, given this evidence, the Court [denied] the exception of prematurity and subject matter jurisdiction. The Court [did] not find that Ms. Swaggart has waived or under these circumstances has given up her right to bring these matters in district court, based on the contract presented and the evidence presented in court on this date.
IsA written judgment denying Regions’ exceptions of prematurity and lack of subject matter jurisdiction, and alternative motion to stay pending arbitration, was signed on November 6, 2015. Regions sought writs with this court.
On February 18, 2016, this court granted the writ, made it peremptory and vacated the trial court’s judgment. A motion to stay pending arbitration was also granted. The ruling stated, in pertinent part, that La. R.S. 9:4201 and 4202 mandate that an arbitration provision in a written contract shall be valid and enforceable, and that any doubt concerning the scope of arbitra-ble issues should be resolved in favor of arbitration. This court stated:
In this case, the evidence presented by the defendants showed that the plaintiff *1124 entered into a contract with Regions Bank for the lease of at least one safe deposit box. The contract, signed by the plaintiff, contained at least one unambiguous, and enforceable, arbitration clause. The plaintiffs claims are referable under the terms of that ai’bitration agreement.
For these reasons, the writ was granted.
Respondent sought writs with the supreme court, which remanded and ordered that the matter be fully briefed and argued.
DISCUSSION
Regions argues that the trial court erred in requiring it to produce an original signed contract in order to prove the existence of a valid agreement to arbitrate. In a related argument, it claims that the trial court erred in failing to apply La. R.S. 18:3740, which permits proof of the contents of a lost or stolen instrument by direct testimony.
It also argues that the only evidence adduced at the hearing was Munson’s testimony and documents introduced without objection. Munson | testified without contradiction that anyone renting a safe deposit box would have been required to sign a contract and that the contract used by Regions contained arbitration clauses. He also testified that Regions had one such contract on file for Respondent, for one safe deposit box, and that he personally saw the signed contract dated July 7, 2011.
Regions further argues that, because Munson’s was the only testimony provided at the hearing, the trial court should have decided the issue based solely on his testimony, not Respondent’s allegations or her counsel’s arguments. It complains that the trial court did not rely on the uncontradict-ed testimony of Munson, but, instead, held that, because Regions did not have the original contract and because Munson did not personally witness her signing the document or see her leaving with the document from his office, there was insufficient proof of the existence of a signed contract containing an arbitration clause.
Regions further argues that Respondent introduced the first page of the contract, which mysteriously disappeared from Munson’s desk when she left his office, and that that contract does contain her signature. This was the first page of a Regions standard-form, three-page contract for every safe deposit box. Respondent did not testify that her signature or the date was forged; and, in fact, her attorney conceded that she signed the contract. Therefore, she should be presumed to know the contents of the document and cannot avoid its obligations by contending that she did not read it, did not understand it or that the other party failed to explain it to her. The forum selection provisions appeared plainly above her signature and gave her notice that on the second page were listed the rights she would be forgoing |1(lif she signed the document. Therefore, Regions contends that the trial court erred in ruling that it had not provided proof of the contract between them.
Regions also argues that the trial court erred by reaching the factual conclusion that Respondent did not sign an agreement that included an arbitration clause. The evidence presented at the hearing consisted only of Munson’s testimony and the two documents introduced and admitted without objection. Respondent did not testify; thus, there was no evidence presented that there was ever more than one box.
Regions further argues that Respondent’s counsel claimed that Respondent had signed a contract for Box 1121, but acknowledged it was not clear whether she had signed the document before or after the box number was changed from 1121 to *1125 1148. It contends that, whether Respondent signed a document indicating Box 1121 or Box 1148 was being rented, both contracts clearly require arbitration of any dispute and the first of such provisions is located directly above Respondent’s signature.
For these reasons, Regions argues that the trial court erred in ruling that it did not meet its burden of proof that the parties agreed to arbitration of the differences between them.
Respondent reiterates her arguments in opposition to the exception of prematurity and the need for arbitration. On the basis that the contract for Box 1148 lacked her consent, she argues that the contract which called for arbitration was void and unenforceable. She further argues that, as to the two boxes of which Regions denied knowledge, Regions should not be permitted to enforce an arbitration agreement in a contract that they denied existed. Therefore, since there was no valid arbitration agreement, she h, contends that her suit was not premature, that the trial court did not lack subject matter jurisdiction and that there was no need to stay this matter pending arbitration.
The issue of whether the trial judge should have compelled arbitration is a question of law. Hansford v. Cappaert Manufactured Hous., 40,160 (La.App. 2 Cir. 9/21/05), 911 So.2d 901; Williams v. Keller Williams Realty, 14-0202 (La.App. 4 Cir. 11/5/14), 154 So.3d 605. Therefore, when reviewing the grant or denial of a motion to compel arbitration, appellate courts determine whether the trial court was legally correct or incorrect. Williams, supra.
The failure of a party to arbitrate in accordance with the terms of an agreement may be raised either through a dilatory exception of prematurity demanding dismissal of the suit or by a motion to stay the proceedings pending arbitration. Long v. Jeb Breithaupt Design Build Inc., 44,-002 (La.App. 2 Cir. 2/25/09), 4 So.3d 930; Wied v. TRCM, LLC, 30,106 (La.App. 2 Cir. 7/24/97), 698 So.2d 685.
La. R.S. 9:4202 provides for a stay of proceedings as follows:
If any suit or proceedings be brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which suit is pending, upon being satisfied that the issue involved in the suit or proceedings is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until an arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with the arbitration.
Under that provision, a court shall stay the trial of an action in order for arbitration to proceed if any party applies for such a stay and shows (1) that there is a written arbitration agreement and (2) the issue is referable to | ^arbitration under that arbitration agreement, as long as the applicant is not in default in proceeding with the arbitration. Coleman v. Jim Walter Homes, Inc., 08-1221 (La. 3/17/09), 6 So.3d 179; Int'l River Ctr. v. Johns-Manville Sales Corp., 02-3060 (La. 12/3/03), 861 So.2d 139.
There is a strong policy in Louisiana favoring arbitration when it has been agreed to by the parties. Mortial v. BPI Home Builder, LLC, 12-2195 (La. 11/2/12), 99 So.3d 1006; Aguillard v, Auction Mgmt. Corp., 04-2804 (La. 6/29/05), 908 So.2d 1; Lincoln Builders, Inc. v. Raintree Inv. Corp. Thirteen, 37,965 (La.App. 2 Cir. 1/28/04), 866 So.2d 326. La. R.S. 9:4201 states:
*1126 A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
La. R.S. 9:4201 and 4202 mandate that an arbitration provision in a written contract shall be valid and enforceable. Once the court finds an agreement to arbitrate and a failure to comply therewith, the court shall order arbitration. Lincoln Builders, Inc., supra-, Matthews-McCracken Rutland Corp. v. City of Plaquemine, 414 So.2d 756 (La. 1982). In Aguillard, supra, the Supreme Court of Louisiana held that any doubt concerning the scope of arbitrable issues should be resolved in favor of arbitration:
Even when the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration. The weight of this presumption is heavy and arbitration should not be denied unless it can be said with positive assurance that an arbitration | ^clause is not susceptible of an interpretation that could cover the dispute at issue.
La. C.C.P. art. 930 allows the introduction of evidence at the contradictory hearing on the dilatory exception to “support or controvert any of the objections pleaded.” When the issue of failure to arbitrate is raised by the exception pleading prematurity, the defendant pleading the exception has the burden of showing the existence of a valid contract to arbitrate, by reason of which the judicial action is premature. Cook v. AAA Worldwide Travel Agency, 360 So.2d 839 (La. 1978); Long, supra-, Wied, supra. Although the party who files the exception carries the burden of proof on the exception, when the plaintiff attacks the validity of the contract, he cannot simply rest on the allegations of his petition. Long, supra. Furthermore, facts referred to solely in the arguments of counsel, in brief or otherwise, are not considered record evidence. Thomas v. Connolly, 31,447 (La. App. 2 Cir. 1/20/99), 726 So.2d 1052.
The existence of a contract and its terms must be proved by a preponderance of the evidence. A contract, an agreement established by the mutual consent of the parties, may be entered into orally, in writing or by action or inaction that under the circumstances is clearly indicative of consent. La. C.C. art. 1927; Morphy, Makofsky & Masson, Inc. v. Canal Place 2000, 538 So.2d 569 (La. 1989); Strozier v. Clay Water Sys., Inc., 573 So.2d 595 (La. App. 2 Cir. 1991). Under Louisiana law, “[a] contract is formed by the consent of the parties established through [an] offer and acceptance.” La. C.C. art. 1927. La. R.S. 9:4201 does not require that the written agreement to arbitrate be signed by the parties.
114La. C.E. art. 1004(1) provides that other evidence of the contents of a writing is admissible if “[a]ll originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith.” La. R.S. 13:3740 provides:
When an instrument in writing, containing obligations which the party wishes to enforce, has been lost or destroyed, by accident or force, evidence may be given of its contents, provided the party show the loss, either by direct testimony, or by such circumstances, supported by the oath of the party, as render the loss probable.
*1127 Evidence not properly and officially offered and introduced cannot be considered, even if it is physically placed in the record. Documents attached to memo-randa do not constitute evidence and cannot be considered as such on appeal. Denoux v. Vessel Mgmt, Servs., Inc., 07-2143 (La. 5/21/08), 983 So.2d 84. Appellate courts are courts of record and may not review evidence that is not in the appellate record, or receive new evidence. Id.; La. C.C.P. art. 2164.
Although the failure of a party to arbitrate in accordance with the terms of an agreement is properly raised either through a dilatory exception of prematurity or by a motion to stay the proceedings pending arbitration, this court has also reviewed an arbitration agreement on an exception of lack of subject matter jurisdiction. In Aeneas Williams Impends, LLC v. Carter, 47,989 (La.App. 2 Cir. 12/13/12), 131 So.3d 894, this court found that the trial court properly sustained the defendants’ exception of lack of subject matter jurisdiction because the evidence demonstrated the existence of a valid arbitration agreement.
11fiMuch of the evidence cited by Respondent in her opposition to this application is not part of the record for review, as it was not admitted into evidence at the hearing on Regions’ exceptions and motion. The only evidence properly admitted was a copy of a blank contract, page one of a contract signed by Respondent, and page one of an unsigned contract for Box 1121. Although she attached the “sworn statements” of Johnson and William French to her opposition to Regions’ exceptions, Respondent did not admit the statements into evidence at the hearing. Such documents do not constitute evidence and may not be considered as such on review. The allegations of the petition and the arguments of counsel are also not considered evidence for purpose of review.
Page one of a three-page Regions Bank Safebox Customer Contract was admitted into evidence (D-2). The page is dated July 7, 2011, and is signed by Judy Dove Swag-gart. The original, typed box number has been marked through and the number “1148” written in. Above the customer’s signature is the following notice (in pertinent part):
The safe deposit box agreement lease agreement which begins on the reverse side of this form limits or waives certain of your rights. With respect to Claims you are agreeing to arbitrate pursuant to the lease, you are waiving your right to bring a court action, and you are waiving the right to have a jury trial on all controversies, whether settled by arbitration or by a court.
In its oral reasons for the denial of Regions’ exceptions and motion, the trial court focused on the fact that Munson did not personally see Respondent sign the contract and that the contract had been altered at some point. However, an arbitration agreement does not have to be signed in order to be valid. La. R.S. 9:4201. Further, Respondent has made no |1fiattempt to rescind the contract or denied that she signed the contract and complains only that the box number and account number had been altered. As such, Regions clearly showed the existence of a written arbitration agreement and that Respondent’s claims fell under the terms of that agreement.
The trial court also noted that Regions was unable to produce the original contract for Box 1148, or the contracts for the other two boxes Respondent allegedly leased. When a document is lost or stolen, evidence may be given of its contents if the proponent shows the loss by direct testimony or circumstances which render the *1128 loss probable. Munson’s uncontradicted testimony showed that the contract with Respondent’s signature on it, directly below the arbitration clause of the standard safe deposit box contract of Regions, existed and that, through no fault of Regions, it no longer had a copy. Regions, through Munson, made a request that the missing document be returned, but Respondent has refused to do so. Therefore, Regions proved the loss by direct testimony and circumstances, and the fact that it did not have a copy of the document cannot be held against it in this matter of arbitration.
Regions also produced and admitted a blank, three-page Regions Safebox Customer Contract (Ex. D-l). The first page of that contract is identical to the page of the contract which bears Respondent’s signature. The second page contains a paragraph labeled “Arbitration and Waiver of Jury Trial.” Unfortunately, the only copy of Exhibit D-l available to this court is a scanned, faxed copy and the terms of the arbitration paragraph are very difficult to read. Nonetheless, Regions, through the direct testimony of |17a witness, proved the existence and contents of the contract and that the original contract was lost or stolen.
Although Respondent argues that the contract lacked her consent and was, therefore, void, her petition specifically alleged breach of that contract and she has made no attempt to rescind the contract. Notably, she presented no evidence to rebut the existence of a valid arbitration clause. Through argument of counsel, she conceded that she signed a “Safebox Customer Contract,” but made no allegation that the arbitration clause was not part of the contract that she signed.
As outlined above, the evidence showed that Respondent entered into a contract with Regions for the lease of at least one safe deposit box, which contained at least one unambiguous and enforceable arbitration clause. Because Regions proved the existence of a valid arbitration agreement, Respondent may not rest upon the allegations of her petition or the argument of counsel. She failed to produce any positive evidence to rebut the evidence presented by Regions that arbitration is warranted in this case.
CONCLUSION
For the foregoing reasons, the writ is granted and made peremptory and the judgment in favor of Respondent Judy Dove Swaggart and against John Doe, Brett Munson, Regions Bank and ABC Insurance Company, overruling the exceptions of prematurity and lack of subject matter jurisdiction and denying the alternative motion to stay pending arbitration, is hereby reversed. Costs of appeal are assessed to Judy Dove Swaggart.
haWRIT GRANTED AND MADE PEREMPTORY; JUDGMENT REVERSED; MOTION TO STAY PENDING ARBITRATION GRANTED.

. The parties dispute the number of safe deposit boxes leased by Respondent; however, the dispute is not material to the issues before this court.