MOORE, J.
Mercedes Brown appeals a Monroe City Court judgment that rejected her claim for damages arising from a two-car accident. For the reasons expressed, we affirm.
FACTS
The accident occurred shortly before 6:00 pm on November 5, 2014. Ms. Brown was driving her 2003 Dodge Intrepid and carrying two passengers. They had just shopped at Advance Auto Parts, on Winnsboro Road, and were leaving to go to Ms. Brown's mother's house, on Marx Street, about five blocks west. This entailed making a left turn out of the Advance Auto Parts parking lot and onto Winnsboro Road, a four-lane, east-west artery. Ms. Brown successfully crossed the two eastbound lanes and entered the left westbound lane. However, she then collided with a 1998 Ford Mustang being driven west by Archie Keaton. Ms. Brown and Keaton gave vastly different accounts of exactly where the impact occurred, and this is essentially the issue on appeal.
Ms. Brown testified by deposition that before she left the Advance Auto Parts parking lot, she stopped, looked to make sure the road was clear, and noticed the Mustang in the parking lot of Mac's Fresh Market, almost directly across from Advance Auto Parts. However, she saw the road was clear, made her left turn, and got halfway into the left westbound lane when the Mustang hit her. She admitted she did not see the Mustang coming until it hit her; she assumed the driver had been pulling out of the driveway of Mac's, making a right turn. After impact, she could not move the Intrepid because the axle was broken.
Keaton, a 78-year-old retired trucker, testified by deposition that he was driving home from his brother's house, in Richwood, and had not been in the Mac's parking lot that evening. Driving in the right westbound lane, he saw the Intrepid trying to exit from Advance Auto Parts; he thought the driver was cutting straight across to ABC Auto Parts, directly across the street (and next to Mac's). When he saw her continuing to move through the left lane, he slowed almost to a stop. Even so, she ran into his left front, breaking his Mustang's headlight and parking light and bending its strut and hubcap. Keaton was somewhat ambiguous about whether he came to a complete stop, or just to a slow crawl, and would not say that the Intrepid "fully entered" the right lane before impact. However, he was consistent that he was always in the right lane, and if Ms. Brown had stayed in the left lane, there would have been no collision. He also testified that by the time police arrived, about seven minutes later, both vehicles were still in place.
*638 PROCEDURAL HISTORY
Ms. Brown filed this suit in Monroe City Court against Keaton and his liability carrier, Affirmative Casualty Insurance Co. Affirmative Casualty went into receivership; its claims are now being administered by Louisiana Insurance Guaranty Association ("LIGA"). In September 2017, LIGA moved for summary judgment. In support, it offered the depositions summarized above. It also offered the deposition of Officer Tarra Smith, who worked the accident and wrote the accident report. Her diagram, on page 7 of the report, showed the Intrepid turning left and crossing 3 ½ lanes before striking the Mustang in the far right lane. Ofc. Smith also stated that she ticketed Ms. Brown for failure to yield and no driver's license. Ms. Brown, in deposition, admitted that she paid the ticket.
Ms. Brown opposed the MSJ, offering her affidavit to reiterate that she saw Keaton backing out of a parking space at Mac's but did not feel she needed to "keep him under observation." She also asserted that Keaton must have tried to make a right turn into the "inside" lane, and if he had stayed in the right lane, there would have been no accident.
The City Court denied summary judgment, ruling that it "cannot determine in what lane of traffic the accident occurred."
The case proceeded to trial before a different judge of the City Court in January 2018. The parties stipulated that they would submit the case "on the entire record," using the depositions developed on MSJ. Ms. Brown's counsel said he had subpoenaed one of the passengers in the Intrepid, Caryette Wilson, but had been unable to find her for service.
LIGA's counsel filed in evidence a compact disc of documents about insurance claims arising from this accident. These showed that Ms. Brown's two passengers, her friend Caryette Wilson and Ms. Wilson's one-year-old daughter, had filed a personal injury claim against Ms. Brown's insurer, GoAuto; GoAuto settled with them for $3,605 and made no claim that Keaton was partly responsible. Also, Keaton made a property damage claim, which GoAuto settled for $1,506. LIGA argued that these settlements, the police officer's report, and Ms. Brown's guilty plea to failure to yield proved that she was solely at fault in the accident.
The City Court rendered judgment stating that the sole cause of the accident was Ms. Brown in "making entry onto and across a roadway when she could not safely negotiate such a maneuver, and in failing to keep a proper lookout." The court also found that Keaton "rightfully occupied the lane of travel" at the time of the collision. The court dismissed Ms. Brown's claims.
Ms. Brown has appealed, raising two assignments of error.
DISCUSSION
By her first assignment of error, Ms. Brown urges the court committed manifest error in finding her solely at fault in causing the collision. She concedes that a left-turning motorist has a duty to proceed with great caution and to keep a proper lookout, but argues that a right-turning motorist also owes a certain duty: not to make a wide turn that crosses into the left lane. Smart v. Calhoun , 49,943 (La. App. 2 Cir. 7/29/15), 174 So.3d 168. She also asserts that every driver must stay in his own lane, Graves v. Page , 96-2201 (La. 11/7/97), 703 So.2d 566, and use ordinary care to avoid hazards ahead, Updegraff v. State , 2001-1048 (La. App. 4 Cir. 10/2/02), 828 So.2d 693, writs denied , 2002-2909, -2916 (La. 2/7/03), 836 So.2d 103, 105. She contends that Keaton was either turning *639 right or going straight ahead; either way, he breached a duty of care.
In support, she cites the view advanced in her own deposition and affidavit that Keaton was trying to pull out of the Mac's driveway just as she was entering the left westbound lane, and he turned too wide into her lane.[1] She stresses Keaton's reluctance to state that the Intrepid fully entered the right lane, and notes some inconsistencies between his deposition and the police report (such as saying he was at almost a complete halt, when the police report said he was doing about 30 mph, or saying that a fire truck was sent to the scene, a point not noted at all in the police report). She also argues that Ofc. Smith had no training in accident reconstruction, so her conclusion (which, according to Ms. Brown, does not match either party's testimony) should be disregarded. Finally, she denies that paying the traffic ticket was an admission against interest, as she did so without legal representation.
If the facts are viewed in this manner, she submits, a trier of fact could conclude only that the accident occurred in the left lane , and Keaton was simply not being honest about how far he strayed to the left when he made his right turn. In the alternative, she submits that if the accident happened on the centerline, then there should be comparative fault. She asks for judgment finding Keaton was 100% at fault, or at least 50% at fault.
A reviewing court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State , 617 So.2d 880 (La. 1993). To reverse a factual finding, the appellate court must find from the record that (1) a reasonable factual basis does not exist for the finding of the trial court and (2) the finding is clearly wrong or manifestly erroneous. Id. ; Read v. Willwoods Cmty. , 2014-1475 (La. 3/17/15), 165 So.3d 883, 40 IER Cases 1022. The reviewing court cannot merely review the record for some evidence that supports the finding; it must review the entire record to determine whether the finding is manifestly erroneous or clearly wrong. The manifest error standard applies even when a case has been submitted solely on a written record. Shephard v. Scheeler , 96-1690 (La. 10/21/97), 701 So.2d 1308 ; Chaney v. Vaughn , 51,795 (La. App. 2 Cir. 2/28/18), 245 So.3d 1208.
We have closely examined the evidence regarding where the collision occurred. Ms. Brown stated in deposition that she "turned into the lane close to the - the inner lane" and "was almost halfway in the lane before he struck [me]." She admitted she saw the Mustang backing out of a space at Mac's; later, by affidavit, she added, "then I looked away instead of keeping him under observation and I didn't see him again until we collided." Finally, she disagreed with Ofc. Smith's rendition of the accident.
Keaton's deposition is, admittedly, not a model of clarity. He consistently stated that he was in the right lane, but, when asked by Ms. Brown's counsel if the Intrepid entered his lane of travel, he replied, "No. She stayed in the right-hand lane - I mean the left-hand lane when she hit - when she hit me. She stayed in the *640 left-hand lane because I had done stopped." Moments later, counsel asked what lane he was in when the accident occurred; he replied, "The right-hand lane," but "No, she didn't enter the right lane. She [was] on the line of the right lane." When Affirmative Casualty's counsel asked if the other driver came into his lane, Keaton again said, "No, not in the lane," and stated that the diagram in the police report was inaccurate because the Intrepid "slidded over there" after impact, but the diagram was accurate in showing his Mustang in the right lane.
Both parties agreed that their vehicles were still in place when Ofc. Smith arrived, and her diagram put the point of impact in the middle of the right lane. Moreover, Ofc. Smith wrote that Keaton told her he was "traveling west on Winnsboro Rd in the far right lane when he was struck by" the Intrepid. This supports Keaton's deposition testimony that he was in the right lane on impact, and counters Ms. Brown's view that they were in the left lane or straddling the centerline.
It is significant that Ms. Brown's own insurer, GoAuto, paid her passengers' personal injury claims as well as Keaton's property damage claim, never asserting that anybody but Ms. Brown was at fault.
Finally, Ms. Brown strongly argues that the damage to the two vehicles was more consistent with a collision in the left lane. We have closely examined the photocopied snapshots attached to Ms. Brown's affidavit and cannot say they are at all conclusive. The minor damage around the right front wheel well of the Intrepid is not distinctive enough to show whether the impact occurred in the right or left lane.
Although there is some evidence that would undermine the City Court's finding, there is not enough to make that finding clearly wrong or manifestly erroneous. We cannot say that the City Court abused its discretion in accepting Ofc. Smith's report of the accident, a portion of Keaton's account, and the decisions of Ms. Brown's own insurer, in favor of Ms. Brown's account. This assignment of error lacks merit.
By her second assignment of error, Ms. Brown urges the court erred in failing to award damages. As we have affirmed the portion of the judgment finding Ms. Brown 100% at fault, we pretermit any consideration of damages.
CONCLUSION
For the reasons expressed, the judgment is affirmed. All costs are to be paid by the plaintiff, Mercedes Brown.
AFFIRMED .

She also cites an "Accidental Injury Report," filled out by her adult passenger, Ms. Wilson, to get treatment with a chiropractor, as corroborating her (Ms. Brown's) version of the accident. On close examination, however, we do not see that this item was actually filed into evidence at trial, but only attached to Ms. Brown's posttrial brief. Neither this court nor the City Court is authorized to consider it as evidence. Denoux v. Vessel Mgmt. Servs. Inc. , 2007-2143 (La. 5/21/08), 983 So.2d 84 ; Swaggart v. Doe , 50,739 (La. App. 2 Cir. 4/5/17), 216 So.3d 1118, writ denied , 2017-0758 (La. 9/22/17), 227 So.3d 822.